09-4738-cr
United States v. Gupta

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Argued:  March 7, 2011                    Decided:  June 17, 2011

Reheard: December 14, 2011[*]                    As Amended: November 8, 2012)

Docket No. 09-4738-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

-*v*.-

RAGHUBIR K. GUPTA,

*Defendant-Appellant*.

_____

Before:

WALKER, B.D. PARKER, HALL, *Circuit Judges*.

_____

Appeal from a judgment of the United States District Court for the Southern District of

New York (Batts, *J.*), convicting Defendant-Appellant Raghubir K. Gupta of one count of

---

[*] This matter was reheard by this Court sitting *in banc*.  After due consideration, and in anticipation of our filing this amended panel opinion, the *in banc* court has voted to dissolve itself.  We therefore vacate our original opinion and summary order, *see United States v. Gupta*, 650 F.3d 863 (2d Cir. 2011); *United States v. Gupta*, 426 F. App'x 12 (2d Cir. 2011) (unpublished summary order), which are superseded by the present amended opinion.  In light of our disposition, Gupta's remaining challenges on appeal to his sentence and the district court's denial of his motion for a new trial based on newly discovered evidence are both moot.

1

immigration fraud and sentencing him principally to 51 months' imprisonment. We hold that under the particular circumstances of this case, the district court's intentional exclusion of the public from the courtroom during the entirety of *voir dire*, without prior consideration of the factors identified in *Waller v. Georgia*, 467 U.S. 39, 48 (1984), violated Gupta's Sixth Amendment right to a public trial. We therefore vacate his conviction and remand for further proceedings.

VACATED AND REMANDED.

_____

SUSAN C. WOLFE, Hoffman & Pollok LLP, New York, New York, *for Defendant-Appellant*.

LEE RENZIN, Assistant United States Attorney (Jesse M. Furman and Katherine Polk Failla, Assistant United States Attorneys, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, *for Appellee*.

ANTHONY S. BARKOW (Courtney M. Oliva, *on the brief*), *for Amicus Curiae* The Center on the Administration of Criminal Law at NYU School of Law, New York, New York, *in support of Defendant-Appellant*.

MARC FERNICH, *for Amici Curiae* The National Association of Criminal Defense Lawyers, White Plains, New York, *and* The New York State Association of Criminal Defense Lawyers, New York, New York, *in support of Defendant-Appellant*.

_____

Hall, *Circuit Judge*:

This appeal presents the narrow question of whether the district court's intentional closure of the courtroom during *voir dire* violated Defendant-Appellant Raghubir K. Gupta's right to a public trial. In *Waller v. Georgia*, 467 U.S. 39, 48 (1984), the Supreme Court held that, consistent with the Sixth Amendment, a trial court may exclude the public from the courtroom only upon satisfaction of a four-factor test, and in *Presley v. Georgia*, 558 U.S. 209,

2

130 S. Ct. 721, 724 (2010), the Supreme Court reiterated that this test applies to closures during *voir dire*. Because the lower court here did not analyze the *Waller* factors prior to closing the courtroom, the closure was unjustified. In prior decisions of this Court, we have suggested that an unjustified closure, under certain and limited circumstances, may not require reversal of the defendant's conviction. *See, e.g.*, *Gibbons v. Savage*, 555 F.3d 112, 120 (2d Cir. 2009) ("[I]t does not follow that every temporary instance of unjustified exclusion of the public—no matter how brief or trivial, and no matter how inconsequential the proceedings that occurred during an unjustified closure—would require that a conviction be overturned."); *Peterson v. Williams*, 85 F.3d 39, 42 (2d Cir. 1996) (applying the same rule). Whatever the outer boundaries of this doctrine may be, however, they do not encompass the present case. Here, the district court's intentional, unjustified exclusion of the public for the entirety of *voir dire* was neither brief nor trivial, and thus violated Gupta's Sixth Amendment right to a public trial. We therefore VACATE his conviction and REMAND for further proceedings not inconsistent with this opinion.

## BACKGROUND

### I.  *Voir Dire*

Jury selection for Gupta's trial commenced at approximately 10:00 a.m. on March 24, 2008. The district court began by distributing a written two-part questionnaire to the *venire*. Before addressing the questionnaire, the court briefly explained to the *venire* members the importance of jury duty, the nature and expected length of the trial, and the jury selection process. The court then read aloud the approximately 75 written questions in part one of the questionnaire, instructing the *venire* members to "follow along" and "jot down or note" on the

3

questionnaire any question to which their answer was "yes." Following the reading of the questions, the court announced a short recess, after which the courtroom deputy filled the jury box and the first few rows of the courtroom with 32 qualified prospective jurors. During this process, the courtroom deputy announced the name of each prospective juror. If an individual juror had answered "yes" to any of the questions in part one of the questionnaire, he or she was questioned further by the court at sidebar; and, if the juror answered "no" to all of the questions, he or she was directed to take a seat. The process took the remainder of the morning. In total, the court questioned 43 prospective jurors at sidebar without objection from Gupta. Eleven were dismissed for cause, all on consent of both parties.

After the 32 qualified prospective jurors were selected, the court excused most of the remaining *venire* members, leaving a few as possible alternates. The court adjourned for lunch, and when *voir dire* resumed at 2:15 p.m., the court asked each prospective juror, in open court, a series of basic questions about his or her background and interests. These questions included questions about, *inter alia*, the juror's residence, employment, level of education, reading interests, and favorite television shows. Neither party requested any additional questions, and none of the prospective jurors was removed during this phase. With questioning complete, the court dismissed the three remaining alternates, who had been present throughout this process. Thereafter, counsel for both parties adjourned to the jury room to exercise their peremptory challenges; neither party raised any objection to the other party's challenges. Upon returning to the courtroom, the deputy impaneled the jury and swore in its members, after which the remaining *venire* members were dismissed. Although it is not clear from the record at what time *voir dire* ended, there was sufficient time left in the afternoon for the court to give preliminary

4

instructions to the jury, for both parties to give their opening statements, and for the court and counsel to have an extended colloquy after the jury had been dismissed. No party raised any contemporaneous objections to anything that occurred during *voir dire*.

II.    First Appeal and Remand

The jury returned a guilty verdict in April 2008. Gupta was sentenced by the district court in October 2009, after which he appealed. In January 2010 (while his appeal was pending before this Court), Gupta submitted a letter to this Court in which he alleged for the first time that the district court had violated his Sixth Amendment right by closing the courtroom during *voir dire*. Relying on the Supreme Court's then-recent decision in *Presley*, Gupta later moved to remand for supplemental fact-finding, and in April 2010, we granted his motion.

On remand, Gupta moved for a new trial, again asserting that the exclusion of the public during *voir dire* violated his right to a public trial. In an affirmation attached to the motion, Gupta's trial counsel declared:

> On January 20, 2010, [Gupta] alerted undersigned counsel to the existence of an issue that had arisen in light of [*Presley*] . . . . After reading widely publicized news reports of the *Presley* decision, the defendant advised undersigned counsel that his brother, Sudhir ("Sam") Gupta, and his companion, Maria Young, had been instructed by the courtroom deputy to leave the courtroom at the time when prospective jurors were being brought in for jury selection. Counsel, who was in the well of the court with the defendant during jury selection, was not aware that any members of the public had been asked to leave.

Joint Appendix on Rehearing *En Banc* ("J.A.") at 228. Gupta attached to the affirmation affidavits from Sudhir Gupta and Maria Young, both of whom affirmed that on the first day of trial, they were asked to leave the courtroom prior to the start of *voir dire* and did not reenter the room until after the jury had been selected. In lieu of an evidentiary hearing, the district court adopted as its factual findings an affidavit submitted by William Delaney, a courtroom deputy,

5

who affirmed that on the day in question, "[s]eventy (70) jurors were ordered and sent to the courtroom for jury selection," and:

> At the Court's direction, in order to accommodate the large numbers of jurors in the *venire* panel, and to protect the panel from hearing anything about the case from any member of the public present, I requested that individuals who were not *venire* panel members leave the courtroom during the jury selection. I conveyed to those individuals that once the jury selection was complete, and there was again space in the public area of the courtroom, they were more than welcome to attend the proceedings.

J.A. at 238-39. After the district court made its findings, jurisdiction was restored to us pursuant to the procedures set forth in *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994).

## DISCUSSION

A defendant's right to a public trial is guaranteed by the Sixth Amendment. *See Waller*, 467 U.S. at 45-47; *see also Presley*, 130 S. Ct. at 723 (noting that, while this right derives from both the First and Sixth Amendments, it is the latter that supports a defendant's public trial right); *cf. Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979) ("Our cases have uniformly recognized the public trial guarantee as one created for the benefit of the defendant."). "The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." *In re Oliver*, 333 U.S. 257, 270 (1948); *accord DePasquale*, 443 U.S. at 412 (Blackmun, *J.*, concurring in part and dissenting in part) ("The public trial is rooted in the 'principle that justice cannot survive behind walls of silence[.]'" (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 349 (1966))); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975) (holding that publicity "serves to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon the administration of justice"). The public trial right unquestionably extends to *voir dire*. *See Presley*, 130 S. Ct. at

6

724; *accord Gibbons*, 555 F.3d at 115 ("The defendant has a right to an open, public trial, including during the jury selection.").

The public trial guarantee is not absolute, however. "[It] may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information. Such circumstances will be rare, however, and the balance of interests must be struck with special care." *Waller*, 467 U.S. at 45. To overcome the guarantee's "presumption of openness," *Press-Enter. Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 510 (1984) (internal quotation marks omitted), trial courts must—"*before* excluding the public from any stage of a criminal trial," *Presley*, 130 S. Ct. at 724 (emphasis added)—satisfy themselves that the following four criteria have been met: (1) "the party seeking to close the [proceeding] must advance an overriding interest that is likely to be prejudiced"; (2) "the closure must be no broader than necessary to protect that interest"; (3) "the trial court must consider reasonable alternatives to closing the proceeding"; and (4) the trial court "must make findings adequate to support the closure," *Waller*, 467 U.S. at 48; *accord Gibbons*, 555 F.3d at 116; *Ayala v. Speckard*, 131 F.3d 62, 69 (2d Cir. 1997) (in banc). In other words, if a court intends to exclude the public from a criminal proceeding, it *must* first analyze the *Waller* factors and make specific findings with regard to those factors. If a trial court fails to adhere to this procedure, any intentional closure is unjustified and will, in all but the rarest of cases, require reversal. *E.g.*, *Presley*, 130 S. Ct. at 725.

Here, despite not making any *Waller* findings, the district court intentionally excluded the public from the courtroom for the entirety of *voir dire*. On these facts alone, the closure was unjustified. *See Waller*, 467 U.S. at 48 (the trial court "must make findings adequate to support

7

[a] closure"). Nevertheless, even if we accept Delaney's affidavit as illustrative of the district court's *Waller* findings (and for the reasons already discussed, such an approach is untenable because the court made no explicit findings *before* closing the courtroom), the reasons identified therein are insufficient to justify the closure. Delaney affirmed that, at the court's direction, he excluded Gupta's brother and girlfriend from the courtroom during *voir dire* because of "the large number of jurors in the *venire* panel" and the need "to protect the panel from hearing anything about the case from any member of the public present." *See* J.A. at 238-39. As we have previously held, such justifications are inadequate—a point the Government has conceded. *See* Original Appellee Br. at 25 & 25 n.* ("[T]he District Court's exclusion of members of the public from the courtroom during *voir dire* violated the four-factor *Waller* test."); *Gibbons*, 555 F.3d at 117 (holding that, under *Waller*, insufficient space because of the size of the *venire* and the risk of tainting the jury pool are not "compelling reasons" for closure).

Because the closure here was unjustified, the presumptive result under *Waller* is vacatur of the conviction. *See, e.g.*, *Presley*, 130 S. Ct. at 725 (reversing and remanding because the trial court failed to comply with *Waller* before closing the courtroom). The Government argues, however, that under our so-called "triviality standard," we should affirm Gupta's conviction, notwithstanding the unjustified closure, because the exclusion of the public in this case was trivial and thus did not violate Gupta's Sixth Amendment public trial right.

Applying that standard in the past, we have reasoned that certain errors are "not significant enough to rise to the level of a constitutional violation." *Carson v. Fischer*, 421 F.3d 83, 94 (2d Cir. 2005); *see Gibbons*, 555 F.3d at 120 ("[Not] every temporary instance of unjustified exclusion of the public—no matter how brief or trivial, and no matter how

8

inconsequential the proceedings that occurred during an unjustified closure—[] require[s] that a conviction be overturned."). As we explained in first articulating a "triviality standard," it

> does not dismiss a defendant's claim on the grounds that the defendant was guilty anyway or that he did not suffer "prejudice" or "specific injury." It is, in other words, very different from a harmless error inquiry. It looks, rather, to whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant—whether otherwise innocent or guilty—of the protections conferred by the Sixth Amendment.

*Peterson*, 85 F.3d at 42. A number of our sister circuits have adopted this same reasoning. *See, e.g.*, *United States v. Perry*, 479 F.3d 885, 890 (D.C. Cir. 2007) (applying *Peterson*'s "triviality standard"); *United States v. Ivester*, 316 F.3d 955, 959-60 (9th Cir. 2003) (applying the "widely-accepted *Peterson* test"); *Braun v. Powell*, 227 F.3d 908, 918-19 (7th Cir. 2000) (adopting *Peterson*'s "triviality standard"); *see also United States v. Greene*, 431 F. App'x 191, 195 (3d Cir. 2011) (holding that *Peterson*'s "triviality analysis" remains valid after *Presley*).

We have repeatedly emphasized, however, the doctrine's narrow application. *See Carson*, 421 F.3d at 94 (applying the triviality standard to an unjustified courtroom closure in light of the "rare circumstances" presented in that case). For example, we have invoked the "triviality standard" where a trial court closed the courtroom to the public during a few hours of a multi-day *voir dire* proceeding, *see Gibbons*, 555 F.3d at 114-15, 121; where a trial court excluded the defendant's former mother-in-law from the courtroom during the testimony of a state informant, which was later summarized during the prosecution's closing arguments, but allowed other family members to remain, *see Carson*, 421 F.3d at 86-87, 92-94; and where courtroom officers inadvertently kept a courtroom closed following the testimony of an undercover officer, thereby preventing members of the public from directly observing the defendant's brief testimony, which was later summarized in open court during closing

9

arguments, *see Peterson*, 85 F.3d at 41-44.[1]  Conversely, we have declined to apply the standard where a trial court excluded the defendant's siblings from the courtroom during the testimony of an undercover agent who provided the bulk of the evidence upon which the defendant was convicted.  *See Smith v. Hollins*, 448 F.3d 533, 535-37, 540-41 (2d Cir. 2006).

The Government urges that, in light of these decisions, the courtroom closure here falls within the category of "trivial" closures that we have previously identified.  We disagree. Whatever the outer boundaries of our "triviality standard" may be (and we see no reason to define these boundaries in the present context), a trial court's intentional, unjustified closure of a courtroom during the entirety of *voir dire* cannot be deemed "trivial."

Much of the Government's argument rests on its observation that the *voir dire* proceedings here failed to produce any contentious issues.  We do not necessarily disagree. Most *voir dire* proceedings are uncontroversial.  But the public trial right is not implicated solely in discordant situations.  Rather, "the value of openness" that a public trial guarantees "lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known."  *Press-Enter.*, 464 U.S. at 508.  Thus, the regularity of the proceedings is an important impression with which the courts should leave observers.  While a public presence will more likely bring to light any errors that do occur, it is the openness of the proceeding itself, regardless of what actually transpires, that

---

[1] In both *Peterson* and *Carson*, the testimony given during the closure was later summarized during closing argument.  The "incorporation of the . . . testimony cannot by itself resolve the Sixth Amendment question.  But it does bear on how seriously the values served by the Sixth Amendment were undermined."  *Peterson*, 85 F.3d at 43.

imparts "the appearance of fairness so essential to public confidence in the system" as a whole. *Id.*

Given the exceptional importance of the right to a public trial, excluding the public for all of *voir dire* without justification grounded in the record, *see Presley*, 130 S. Ct. at 724; *Waller*, 467 U.S. at 48, is not trivial. Indeed, to conclude otherwise would eviscerate the right entirely. Absent the triviality exception, reversal is required here because the district court failed to make *Waller* findings before excluding the public from the courtroom.

*     *     *

As a final matter, the Government maintains, notwithstanding the above, that we should deem Gupta's Sixth Amendment challenge forfeited because Gupta did not object contemporaneously to the exclusion of the public during *voir dire*.

The Government bases its argument on the theory that Gupta learned of the district court's exclusion of his brother and girlfriend prior to the close of *voir dire*, and, for this reason, Gupta had an obligation either to object to the exclusion himself or to inform his counsel of this fact. Although the record is at best undeveloped on this point, the parties do agree that Gupta's trial counsel was unaware of the closure at the time it occurred. The Government would have us conclude that, because Gupta has not *affirmatively* demonstrated that he did not know of the closure, we should assume that he had such knowledge and therefore hold him accountable. We decline this invitation. Nothing apart from the Government's speculation supports the conclusion that Gupta was aware of the closure when it happened and thus had the ability to raise a contemporaneous objection. Even if we assume that Gupta had such knowledge, however (and there is no record evidence supporting this assumption), we are loath to impute to a

11

defendant—at least in the circumstances here—an obligation to raise a legal objection as to which his own defense counsel is ignorant during the throes of trial. *Cf. United States v. Tramunti*, 500 F.2d 1334, 1341 n.3 (2d Cir. 1974) ("Defense counsel cannot fairly be penalized for failure to raise at trial an issue of which he was, without his own fault, ignorant."). We therefore reject the Government's argument that Gupta has forfeited his Sixth Amendment claim.[2]

---

[2] Judge Parker would hold that the record is sufficiently developed to find that the Government forfeited its forfeiture argument on the following basis:

(1) This Court ordered a *Jacobson* remand on April 29, 2010. On June 8, 2010, while the case was before the district court, Gupta filed a motion for a new trial and for bail pending appeal, arguing that his Sixth Amendment right to a public trial had been violated. On July 14, 2010, the Government responded. The Government addressed the merits of Gupta's argument, insisting that any improper closure that may have occurred during the trial was subject to the triviality exception and that therefore a new trial was not warranted. Despite this clear opportunity to do so, the Government did not argue that Gupta had forfeited his Sixth Amendment claim by failing to raise it earlier.

(2) Prior to the remand, the Government could have raised the forfeiture issue, but did not. In response to Gupta's Motion for Remand in this Court, the Government submitted an affirmation agreeing to that relief. At that point, the Government could have argued that Gupta's claim was forfeited, or could have argued for the development of facts necessary to raise forfeiture on appeal, but it did not.

Accordingly, it is clear to Judge Parker that the Government forfeited its forfeiture argument. *See, e.g.*, *United States v. Braunig*, 553 F.2d 777, 780 (2d Cir. 1977) ("[W]here a party has shifted his position on appeal and advances arguments available but not pressed below, and where that party has had ample opportunity to make the point in the trial court in a timely manner, waiver will bar raising the issue on appeal." (citations omitted)).

Judges Walker and Hall, based on the analysis already articulated in the opinion, are of the view that it is unnecessary to resolve whether the Government's argument has been forfeited, and thus refrain from doing so.

## CONCLUSION

As should be clear from the above, the importance of the public trial right dictates that, before closing a courtroom to the public, a trial court must inform the parties of its intentions and make explicit *Waller* findings. Failure to comply with this procedure will, in nearly all cases, invite reversal. While we do not rule out the possibility that in the rare circumstance an unjustified closure may, under our "triviality standard," not require reversal of the defendant's conviction, this is not the present case. Here, the district court's intentional, unjustified closure of the courtroom for the entirety of *voir dire* violated the defendant's Sixth Amendment right to a public trial. We therefore VACATE his conviction and REMAND for further proceedings not inconsistent with this opinion.