

# Missouri Court of Appeals

## Southern District

### Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD32702 |
| | ) | |
| JOHNNY R. DAVIS, JR., | ) | FILED: July 9, 2014 |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF McDONALD COUNTY

Honorable John R. LePage, Judge

**REVERSED AND REMANDED**

Johnny Davis appeals his convictions for kidnapping and first-degree assault. He complains, in part, that closing the courtroom during voir dire violated his right to a public trial. We agree.

Thirty years ago in ***Waller v. Georgia***, 467 U.S. 39, 45-48 (1984), the Supreme Court affirmed that public criminal trial guarantees extended to voir dire and pretrial hearings, and described a four-part test for courts to assure that any "rare" closure would pass constitutional muster.

Four years ago, reiterating that "*Waller* provided standards for courts to apply before excluding the public from any stage of a criminal trial," the Court reversed a conviction because the trial judge, citing limited space, closed voir dire to the public without considering all reasonable alternatives. ***Presley v. Georgia***, 558 U.S. 209, 213-16 (2010).

Last year, in a case "similar to ***Presley***," this court found "that the trial court did not follow the procedure necessary to close a courtroom to the public during *voir dire*." ***State v. Salazar***, 414 S.W.3d 606, 613 (Mo.App. 2013). We declined to reverse only because the record failed to show that anyone "was actually prevented from attending *voir dire* by the trial court's actions." ***Id***. That is not true in this case. We reverse and remand.[1]

## Constitutional Principles

The Sixth Amendment right to a public trial extends to voir dire. ***Presley***, 558 U.S. at 213. It may yield to other interests in "rare" instances, such as a need to protect sensitive information, but "the balance of interests must be struck with special care." ***Waller***, 467 U.S. at 45.

Specifically, four criteria must be met before courts exclude the public from any stage of a criminal trial:

1. The proponent for closure must advance an overriding interest likely to be prejudiced unless the proceeding is closed;

2. Closure can be no broader than necessary to protect that interest;

---

[1] The state concedes that voir dire was closed in the constitutional sense, and that a Sixth Amendment public-trial violation is structural error that requires no showing of prejudice.

3. The court must consider reasonable alternatives to closing the proceeding; and

4. The court must make findings adequate to support the closure.

*Id.* at 48, *cited in **Presley***, 558 U.S. at 213.

A trial court must consider alternatives to closure even if none are suggested by the parties. ***Presley***, 558 U.S. at 214-15. "Trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials." ***Id***. at 215.

> In other words, if a court intends to exclude the public from a criminal proceeding, it *must* first analyze the *Waller* factors and make specific findings with regard to those factors. If a trial court fails to adhere to this procedure, any intentional closure is unjustified and will, in all but the rarest of cases, require reversal.

***U.S. v. Gupta***, 699 F.3d 682, 687 (2d Cir. 2012).[2]

## Courtroom Closure in This Case

Prior to voir dire, Davis's attorney asked the trial court to accommodate the public based on "the right to a public trial," indicating that Davis's family and perhaps the press might attend. The court denied the request, citing limited space, but said the courtroom would re-open "once the cuts are made and we don't have 50-some jurors here." The court also confirmed for the record that "14 empty seats in the jury box [would] remain empty during the voir dire selection."

---

[2] Specifically as to voir dire closures, *see also **U.S. v. Agosto-Vega***, 617 F.3d 541 (1st Cir. 2010); ***Commonwealth v. Alebord***, 953 N.E.2d 744 (Mass.App. 2011); ***State v. Turrietta***, 308 P.3d 964 (N.M. 2013); ***People v. Martin***, 949 N.E.2d 491 (N.Y. 2011); ***Turner v. State***, 413 S.W.3d 442 (Tex.App. 2012).

3

The venire was brought in and voir dire began. At the first break, the court noted that Davis's family had arrived "and asked to come in and were told that they could not because of our earlier rulings." Davis's continuing objection was noted.

After that break, voir dire continued to conclusion, then Davis's attorney made further record that no member of the public had been admitted to voir dire; at least 14 empty seats in the jury box could have been used, either for prospective jurors or the public; and Davis's family had been there, wanting to attend. The court replied that Davis's family arrived after voir dire started "and we would have had to disrupt the entire panel, because they've got basically the whole aisle taken for prospective jurors, to bring those family members through them to seat them in the jury box, so that request is still denied."

### *Presley* Closure Compared

When the trial court excluded Presley's uncle (the lone observer) from voir dire, Presley's attorney objected and requested accommodation. The court said there was not enough room, but "the uncle can certainly come back in once the trial starts." *Presley*, 558 U.S. at 210. Later, a record was made that 14 prospective jurors "could have fit in the jury box and the remaining 28 could have fit entirely on one side of the courtroom, leaving adequate room for the public." *Id*. at 210-11. This did not convince the judge, who said he preferred to seat potential jurors throughout the courtroom and that it was "'up to the individual judge to decide ... what's comfortable.'" *Id*. at 211.

4

The Supreme Court reversed, remanded, and declared that trial courts must "take every reasonable measure to accommodate public attendance at criminal trials." ***Id***. at 215.

> Nothing in the record shows that the trial court could not have accommodated the public at Presley's trial. Without knowing the precise circumstances, some possibilities include reserving one or more rows for the public; dividing the jury venire panel to reduce courtroom congestion; or instructing prospective jurors not to engage or interact with audience members.

***Id***. Thus, "even assuming, *arguendo,* that the trial court had an overriding interest in closing *voir dire,* it was still incumbent upon it to consider all reasonable alternatives to closure. It did not, and that is all this Court needs to decide." ***Id***. at 216.

### *Presley* Compels Reversal Here

Similarities between ***Presley*** and this case are too strong to ignore. Both cases involve criminal trials and the Sixth Amendment right to public trial. The entire voir dire was closed to the public in both cases. In both cases, the defendant's family also was excluded. Both trial courts cited lack of space in the courtroom's audience area. Both trial courts disregarded ***Waller***. Neither court proactively sought alternatives to closure. Both jury boxes had 14 empty chairs which, with appropriate judicial flexibility or planning, may have allowed family members or interested citizens to observe. Neither court made findings to justify closure despite 14 empty chairs.

We need not belabor the point. As in ***Presley***, without making any ***Waller*** findings, the trial court excluded Davis's family and the public from the courtroom

for all of voir dire.  On these facts alone, closure was unjustified.  ***Presley***'s outcome must follow here.  The state offers no persuasive argument or case to the contrary.[3]

## Conclusion

Surprisingly, and in fairness to the trial court and perhaps local prosecutors, only one Missouri case prior to this trial had cited ***Waller*** and only in limited detail, with no mention of its four-step test (any closure complaint there had been waived).[4] If ***Waller***'s requirements were not widely known to our trial bench, then it likely did not help that Davis's counsel never mentioned ***Waller*** and cited ***Presley*** only *after* the jury had been selected and sworn.  All that said, we remain duty-bound to enforce the Constitution.

To borrow again from ***Gupta***, "the importance of the public trial right dictates that, before closing a courtroom to the public, a trial court must inform the parties of its intentions and make explicit *Waller* findings.  Failure to comply with this procedure will, in nearly all cases, invite reversal."  699 F.3d at 690.  "While we do not rule out the possibility that in the rare circumstance an unjustified closure may, under [a] 'triviality standard,' not require reversal of the defendant's

---

[3] We considered *sua sponte* whether this closure, while unjustified, might be excused as trivial.  "The triviality doctrine holds that certain courtroom closures are too trivial to affect a defendant's public trial rights," but is largely confined to "cases involving unintentional closures for short periods of time."  Zach Cronen, *Behind Closed Doors: Expanding the Triviality Doctrine to Intentional Closures - State v. Brown*, 40 Wm. Mitchell L. Rev. 252, 258, 261 & n.80 (2013).  Having surveyed current law, however, we join the Second Circuit in concluding "that a trial court's intentional, unjustified closure of a courtroom during the entirety of *voir dire* cannot be deemed 'trivial.'"  ***Gupta***, 699 F.3d at 689.

[4] *See* ***State v. Williams***, 328 S.W.3d 366, 370-71 (Mo.App. 2010).  More than 1,000 non-Missouri cases cited ***Waller*** during this 29-year period.  We handed down ***Salazar*** – the only other Missouri opinion citing ***Waller*** or ***Presley*** – after Davis's trial.

conviction, this is not the present case." *Id*. "Here, the [trial] court's intentional, unjustified closure of the courtroom for the entirety of *voir dire* violated the defendant's Sixth Amendment right to a public trial." *Id*.

We need not reach Davis's other arguments for reversal. We reverse and remand for further proceedings consistent with this opinion.

DANIEL E. SCOTT, J. – OPINION AUTHOR

WILLIAM W. FRANCIS, JR., C.J., P.J. – CONCURS

JEFFREY W. BATES, J. – CONCURS