23-6258-cr
*United States v. Johnson*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**<u>SUMMARY ORDER</u>**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of December, two thousand twenty-four.

PRESENT:       GUIDO CALABRESI,
                  SARAH A. L. MERRIAM,
                      *Circuit Judges*,
                  JED S. RAKOFF,
                      *District Judge*.[*]

---

UNITED STATES OF AMERICA,

    *Appellee*,

      v.                             23-6258-cr[1]

---

[*] Judge Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

[1] This appeal is currently consolidated with four other dockets: 23-6011; 23-6021; 23-6091; and 23-6098. On November 17, 2023, this Court dismissed 23-6011 and 23-6021. On December 6, 2024, this Court addressed defendant John Martin's appeals at docket numbers 23-6091 and 23-6098 in a separate summary order.

LAMONTE JOHNSON, JOHN MARTIN, a/k/a
John-John, a/k/a Little John, a/k/a Lil John,
a/k/a LJ; COREY MOBLEY,

     *Defendants-Appellants*,

GABRIEL STROIA; BRANDON DANIELS;
SHI ZHEN LIN, a/k/a Kevin Lin, a/k/a Kev,

     *Defendants*.

_____

FOR APPELLEE:

MICHAEL W. GIBALDI (Susan Corkery, Jonathan Siegel, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States District Attorney for the Eastern District of New York, Brooklyn, NY.

FOR DEFENDANT-APPELLANT:

SUSAN C. WOLFE, Riverdale, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Dearie, *J.*).

**UPON DUE CONSIDERATION,** the judgment of the District Court entered on January 25, 2023, is **AFFIRMED in part** and **REMANDED in part**.

Defendant-appellant Lamonte Johnson ("Johnson") appeals from his conviction, after a jury trial, on two counts: Count One, conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. §1951(a), and Count Two, committing and threatening to commit physical violence in furtherance of a plan to commit Hobbs Act robbery in violation of

18 U.S.C. §2 and §1951(a).[2] Johnson argues that he is entitled to a new trial under two theories. First, he seeks a new trial because the District Court closed the courtroom in violation of his Sixth Amendment right to a public trial; in the alternative, he seeks remand for a hearing to determine whether his trial counsel was ineffective for not objecting to the closure prior to trial. Second, Johnson argues that he is entitled to a new trial because a government witness, Ivan Eli ("Eli"), perjured himself at trial. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

I.     **Sixth Amendment Public Trial Claim**

A.     **Closure of the Courtroom**

On May 5, 2022, at the routinely scheduled pre-trial conference in this matter, the District Court stated:

> Now, we have a problem with COVID again. . . . I am going to resort to the prior system, three-courtroom system, as much as I would rather not. . . . [W]e will have a viewing room for the public . . . . I would rather not do it, frankly, but given what has been reported not only in the popular press but by the Court's own epidemiologist, that, to me, is the prudent choice. So, that is how we are going to handle it.

Gov't App'x at 25-26. The "three-courtroom system" refers to a system put in place by the Eastern District of New York at the height of the COVID pandemic in which testimony was heard in one courtroom, the jury used a separate courtroom for its

---

[2] The jury also convicted Johnson of possessing and brandishing firearms during a crime of violence in violation of 18 U.S.C. §2, §924(c)(1)(A)(i), and §924(c)(1)(A)(ii) (Count Three). The District Court dismissed Count Three at Johnson's sentencing on the government's motion.

deliberations, and a third room was used for members of the public to observe a live feed of the trial. Neither party's counsel objected to this plan.

Johnson argues that his "right to a public trial was violated when the courtroom was closed to all members of the public, including his family, and the public was relegated to a separate viewing room" such that "the trial participants could not see the members of the public and the camera in the courtroom did not capture . . . the witnesses on the stand." Appellant's Br. at 12. He argues that "[t]his blanket exclusion of the public" entitles him to a new trial in an open courtroom. *Id.*

The Sixth Amendment guarantees every person accused in a criminal prosecution the right to a "public" trial. U.S. Const. amend. VI. The Supreme Court held in the seminal case of *Waller v. Georgia*, 467 U.S. 39, 48 (1984), that certain requirements must be met before a district court may close the courtroom. As this Court has explained, under *Waller*, to overcome the presumption in favor of an open, public trial,

> trial courts must—*before* excluding the public from any stage of a criminal trial—satisfy themselves that the following four criteria have been met: (1) the party seeking to close the proceeding must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceeding; and (4) the trial court must make findings adequate to support the closure. In other words, if a court intends to exclude the public from a criminal proceeding, it *must* first analyze the *Waller* factors and make specific findings with regard to those factors. If a trial court fails to adhere to this procedure, any intentional closure is unjustified and will, in all but the rarest of cases, require reversal.

*United States v. Gupta*, 699 F.3d 682, 687 (2d Cir. 2012) (alteration, citations, and quotation marks omitted). A deprivation of the public trial right constitutes a "structural" error to which harmless error analysis does not apply. *Arizona v. Fulminante*, 499 U.S.

279, 310 (1991). *But see Gibbons v. Savage*, 555 F.3d 112, 120 (2d Cir. 2009) ("[I]t does not follow that every temporary instance of unjustified exclusion of the public . . . would require that a conviction be overturned.").

However, as noted, Johnson did not object to the closure prior to trial; accordingly, our precedent holds that his claim is subject to plain error review. *See United States v. Laurent*, 33 F.4th 63, 95-96 (2d Cir. 2022) ("Because a violation of the right to a public trial is a structural claim, it is not subject to harmless error review; however, where, as here, the defendant failed to object to the exclusion, we review the claim for plain error."); *United States v. Mendonca*, 88 F.4th 144, 152 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2531 (2024) ("Although the structural nature of a public trial violation removes it from the ambit of *harmless*-error review, where that violation is not objected to below, we still review the claim for plain error." (citation and quotation marks omitted)).

To prevail on plain error review, Johnson must demonstrate the existence of (1) an error, (2) that is plain, (3) that affects his substantial rights, and which (4) "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gomez*, 705 F.3d 68, 75 (2d Cir. 2013) (alteration, citation, and quotation marks omitted). "It is the defendant's burden to establish all four requirements." *Mendonca*, 88 F.4th at 152 (citation omitted).

The District Court failed to make adequate findings *before closing the courtroom*, as required. The Supreme Court has made clear that such findings must be made on the record "*before* excluding the public from any stage of a criminal trial." *Presley v. Georgia*, 558 U.S. 209, 213 (2010) (emphasis added); *accord Gupta*, 699 F.3d at 687.

5

The District Court made some comments when it announced its plan to close the courtroom – which it did without seeking the input of the parties – but it did not make formal findings. *See* Gov't App'x at 25-26. The District Court's brief comments, and its declaration that there was "a problem with COVID again," were not sufficient to satisfy *Waller* and *Gupta*. As such, the District Court erred, and the error was plain. We also assume, given the Sixth Amendment right at stake, that the error affected Johnson's substantial rights. *See United States v. Marcus*, 560 U.S. 258, 263 (2010) (reserving "the possibility that certain errors, termed structural errors, might affect substantial rights regardless of their actual impact on an appellant's trial" (alteration, citations, and quotation marks omitted)).

We cannot say, however, in the particular circumstances of this trial, that the closure "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings," as required for Johnson to prevail on plain error review. *Gomez*, 705 F.3d at 75. Throughout Johnson's trial, the District Court provided a separate viewing room, open to the public, with a live audio-video stream of the trial, consistent with the "three-courtroom system" that was commonly used previously, when COVID safety was a concern. When, after the trial, an objection to the closure was first raised,[3] the District

---

[3] The closure issue was first raised by Johnson's friend, Robert Rose III, who had viewed the trial from the public viewing room. Rose wrote a letter to Chief Judge Brodie dated May 23, 2022, and filed May 24, 2022 – the day the jury returned its verdict – arguing that the District Court's physical exclusion of the public from the trial courtroom amounted to an unconstitutional closure, in spite of the live-stream available in the separate viewing room. *See* Joint App'x at 33-34.

Court promptly held a status conference and, thereafter, an evidentiary hearing during which both parties called witnesses. After the evidentiary hearing, Johnson's counsel filed a motion for a new trial based on the courtroom closure. On June 28, 2022, the District Court entered a five-page written order denying that motion, holding that "[t]he testimony adduced at the evidentiary hearing did not reveal any facts undermining the fairness of Mr. Johnson's trial," that the use of a three-courtroom system did not amount to a closure, and that, even if it had, it "passes Sixth Amendment muster." Joint App'x at 37-38.[4]

The District Court erred in failing to adequately and expressly address the *Waller* factors *prior* to the closing the courtroom. But in assessing whether to grant relief on plain error review – specifically, in considering whether the error seriously affects the fairness, integrity, or public reputation of the trial – we take into account the District Court's efforts to address the issue as soon as it was raised. The record reflects that during the trial, when members of the public complained about the quality of the audio-video feed, those concerns were promptly addressed. After the trial, when Rose expressly objected to the closure, the District Court conducted a thorough hearing and gave Johnson a meaningful opportunity to present evidence and arguments in support of his request for a new trial.

In applying the plain error standard, we also take into account that the District

---

[4] We assume, without deciding, that the District Court's physical exclusion of the public from the courtroom and use of a separate viewing room for the public amounted to a closure.

Court was acting in response to a spike in COVID infections, and that such spikes were an ongoing problem well into 2022 and 2023. And we note that although the District Court had an independent obligation to make proper findings even without an objection, it surely would have made more detailed findings if Johnson had objected to the closure – or indeed voiced any concern at all about it at the time. *See United States v. Hunt*, 82 F.4th 129, 141 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1396 (2024) ("[G]iven the lack of an objection, the district court cannot be faulted for failing to provide more detailed reasoning for its decision.").

In sum, Johnson has failed to demonstrate how the fairness, integrity, or public reputation of judicial proceedings was called into question by the District Court's closure under these unusual circumstances, especially in light of the District Court's subsequent efforts to address Johnson's concerns. Johnson argues in a conclusory fashion that structural error "has been established" and that, as a result, he "must be granted a new, public trial where observers, especially his family, can hear, see, feel and judge for themselves the quality of justice." Appellant's Br. at 31, 34. This is insufficient to meet the fourth prong of plain error review. *See Gomez*, 705 F.3d at 76 (holding that, even if the exclusion of the defendant's family members from the courtroom "was error, it cannot be viewed as one that affected the fairness, integrity, or public reputation of judicial proceedings"); *Mendonca*, 88 F.4th at 156 ("[W]e have excused other public trial violations under the fourth prong where the error similarly arose from the district court's understandable – though flawed – response to logistical constraints and other environmental concerns.").

Accordingly, we conclude that the District Court did not commit plain error in closing the courtroom, or in denying Johnson's motion for a new trial on the basis of the closure issue.

## B.     Ineffective Assistance of Counsel

Johnson next claims that he "is entitled to a new trial or a new hearing because he was deprived of the effective assistance counsel by his counsel's failure to zealously and adequately litigate the violation of his public trial right at a post-trial hearing." Appellant's Br. at 13. He further argues that, because his trial counsel failed to request that the District Court "consider making room for some or all of Johnson's family" prior to trial and "did nothing" when he received a copy of Rose's letter during the trial, his trial counsel "came to the [post-trial evidentiary] hearing with a conflict of interest." *Id.* at 34-35.

When presented with "a claim for ineffective assistance on direct appeal, we may do one of three things: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent §2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us." *United States v. Leone*, 215 F.3d 253, 256 (2d Cir. 2000). We generally decide ineffective assistance claims on direct appeal only where "the factual record is fully developed" and the outcome is clear. *United States v. Bodnar*, 37 F.4th 833, 845 (2d Cir. 2022) (citation and quotation marks omitted).

Johnson's ineffective assistance claim regarding closure was not raised below, and thus the District Court has not had an opportunity to develop the factual record. Often, we

9

would therefore simply decline to hear the claim and leave it to Johnson to file a habeas petition. But here, the District Court's failure to make adequate findings prior to the closure amounted to structural error, *see Fulminante*, 499 U.S. at 310, and such an error might well support reversal if Johnson had objected and preserved his objection. It is only the failure of Johnson's counsel to object that places the additional hurdle of plain error review in Johnson's path. But we cannot be sure whether counsel's decision to make only the very limited post-trial objection was strategic, nor can we know whether there would have been any basis for an ineffective assistance claim if counsel had objected to the closure before trial. We therefore remand to the District Court to conduct the fact-finding necessary to assess Johnson's ineffective assistance of counsel claim. *See Leone*, 215 F.3d at 256.

## II.  <u>Perjury Claim</u>

Johnson also contends that he is entitled to a new trial because Eli, a government witness, perjured himself at Johnson's trial. It is undisputed that Eli lied on the stand regarding his ongoing illicit drug use. On direct examination, Eli testified: "I've been clean since the last time I got high . . . in 2020." *Johnson*, No. 1:19CR00221-5(RJD), Doc. #374, Tr. at 316-17 (E.D.N.Y. Dec. 17, 2022). Shortly after Johnson's trial, this testimony was revealed to be false. On June 16, 2022, the government sent a letter to the District Court stating that it had "learned that [Eli] has been abusing prescription cough syrup, that [Eli] has obtained cough syrup using fraudulent prescriptions under fake names, and that [Eli] has on multiple occasions sold small amounts of prescription cough syrup to others for amounts totaling several hundred dollars." *Id.*, Doc. #314, Ex. B at 1

(E.D.N.Y. July 26, 2022). Counsel for the government met with Eli on June 23, 2022, at which time Eli admitted that he "probably took some a few days before [Johnson's] trial." *Id.*, Doc. #314, Ex. C. at 2 (E.D.N.Y. July 26, 2022). After learning this information, Johnson requested a hearing and subsequently filed a motion for a new trial on the basis of Eli's perjury. The District Court orally denied the motion at sentencing.

"We review the District Court's decision to deny [a defendant's motion for a new trial] for abuse of discretion, upholding findings of fact that were made in the course of deciding the motions unless they are clearly erroneous." *United States v. Stewart*, 433 F.3d 273, 295 (2d Cir. 2006). "A defendant claiming that his conviction should be reversed based upon allegations of perjured testimony must show: (i) the witness actually committed perjury, (ii) the alleged perjury was material, (iii) the government knew or should have known of the alleged perjury at time of trial, and (iv) the perjured testimony remained undisclosed during trial." *United States v. Walters*, 910 F.3d 11, 29 (2d Cir. 2018) (citation and quotation marks omitted).

The parties do not dispute the first and fourth prongs: Johnson and the government agree that Eli perjured himself at trial about his ongoing drug use and that the perjured testimony remained undisclosed to the District Court throughout the trial. Thus, we focus on the remaining prongs: Johnson must show that Eli's alleged perjury was material and that the government should have known of the alleged perjury at the time of trial. *See Walters*, 910 F.3d at 29.

Perjured testimony is material if it would "undermine confidence in the verdict." *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996) (citation and quotation marks

omitted); *see also United States v. Seijo*, 514 F.2d 1357, 1364 (2d Cir. 1975) (stating that the test for materiality is whether the false testimony "could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction" (citation and quotation marks omitted)). Thus, for Eli's testimony to be "material" in this context, Johnson must show that it was important to the government's case and that it was meaningfully undermined by the perjury.

Johnson argues that Eli "gave testimony essential to the government's case" including "de-coding some of the words used during the jail calls between Johnson and his brother," and that "[w]ithout Eli, the jury could not have appreciated critical parts of the jail calls and many of the conversations would be open to alternative interpretation." Appellant's Br. at 47, 48. The District Court disagreed, finding that Eli was a "bit player" and "not . . . by any means a centerpiece to the Government's case," and that "[t]he principal evidence against Mr. Johnson . . . was Mr. Johnson and the conversations that took place between him and his co-conspirators." Joint App'x at 45-46. Johnson further contends that "Eli's lie on the stand . . . went to the core of his credibility." Appellant's Br. at 45. The District Court found, however, that much of Eli's testimony was independently corroborated, and that "trial counsel did a very effective job in undermining [Eli's] credibility." Joint App'x at 46. These findings, which are not clearly erroneous, *see Wong*, 78 F.3d at 78-79, supported the District Court's conclusion that it did not "see Mr. El[i] as a reason to consider a new trial." Joint App'x at 46.

At trial, Eli's unreliability was persuasively challenged on bases unrelated to his perjury – indeed, the government even told the jury in its summation that "if you bumped

into Ivan Eli on the street you should check to make sure your wallet is still in your pocket" and advised: "When you review Ivan Eli's testimony if he says something not corroborated, ignore it." *Johnson*, No. 1:19CR00221-5(RJD), Doc. #337, Tr. at 547 (E.D.N.Y. Sept. 22, 2022). Any further impeachment resulting from Eli's perjured testimony regarding his drug use would almost certainly have been cumulative. *See United States v. White*, 972 F.2d 16, 21 (2d Cir. 1992) (holding that because a cooperating witness's undisclosed drug use "would simply affect the general credibility of [the witness] and was not evidence that he was lying as to a particular fact about the crime, the evidence was cumulative to other evidence of collateral matters that focused on his credibility").

The District Court did not abuse its discretion in denying the motion for a new trial, having concluded that the jury's verdict was "indeed supported by the evidence" and that there was "no basis to consider the application for new trial." Joint App'x at 46-47; *see also White*, 972 F.2d at 20-21 ("The importance of [a witness's perjury] is, of course, lessened when the perjury involves some collateral matter concerning the witness, rather than testimony about facts relevant to the merits of the case."). Because we find that Eli's perjury was not material, we affirm the denial of the motion for a new trial; we need not reach the question whether the government should have known of the alleged perjury prior to or during trial.

\* \* \*

We have considered Johnson's remaining arguments on appeal and find them to be without merit. For the foregoing reasons, the judgment of the District Court is

13

**AFFIRMED in part** and **REMANDED in part**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court