20-3494-cr
*United States v. Wilbern*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of October, two thousand twenty-two.

Present:

> ROSEMARY S. POOLER,
> RAYMOND J. LOHIER, JR.,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

v.                                                                              20-3494-cr

RICHARD LEON WILBERN,

> *Defendant-Appellant*.

---

| | |
|---|---|
| For Appellee: | KATHERINE A. GREGORY, Assistant United States Attorney, *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY |
| For Defendant-Appellant: | SARAH BAUMGARTEL, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY |

Appeal from a judgment of the United States District Court for the Western District of New York (Charles J. Siragusa, *Judge*).

1

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Richard Leon Wilbern appeals from a judgment of conviction, entered against him on September 22, 2020, for a robbery resulting in death at a Xerox Federal Credit Union in violation of 18 U.S.C. §§ 2113(a) and 2113(e).

On appeal, Wilbern argues that the district court erred by: (1) admitting into evidence low copy number ("LCN") DNA profiles; (2) preventing Wilbern from confronting every analyst involved in generating the LCN DNA profiles; (3) prohibiting Wilbern from communicating with his counsel overnight during trial; (4) refusing to investigate post-trial evidence of allegedly racist remarks made by an alternate juror to another juror; and (5) admitting witness identifications elicited under suggestive circumstances. We assume the parties' familiarity with the case.

## I.     Admission of LCN DNA Evidence

Wilbern first argues that the district court erred by denying his motion to exclude LCN DNA evidence under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). We disagree.

Federal Rule of Evidence 702 allows expert witness testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony bears "the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020) (internal quotation marks omitted). The determination of whether testimony is reliable and therefore admissible as an expert opinion is multi-factored and flexible. *Daubert*, 509 U.S. at 592–94. Under *Daubert*, there are five non-

2

exclusive factors that a court may consider in determining the reliability of expert testimony:

> (1) whether a theory or technique has been or can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the technique's known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation[;] and (5) whether the technique is generally accepted in the relevant scientific community[.]

*Jones*, 965 F.3d at 159 (internal quotation marks omitted) (quoting *Daubert*, 509 U.S. at 593–94). A trial judge conducting this flexible inquiry has "considerable leeway" in determining whether to admit expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Accordingly, a district court's decision to admit or exclude expert scientific testimony is reviewed for abuse of discretion and will be overturned only where the decision was "manifestly erroneous." *Jones*, 965 F.3d at 161–62 (internal quotation marks omitted). A decision to admit expert testimony can be manifestly erroneous if, for example, the testimony is:

> based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, or if the opinion is speculative or conjectural, . . . or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison.

*Id.* at 162 (internal quotation marks and citations omitted). "But other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Id.* (internal quotation marks omitted).

After reviewing the trial record, we conclude that the district court did not abuse its discretion in admitting the LCN DNA evidence, and we reject each of Wilbern's arguments to the contrary. First, it was not manifestly erroneous for the district court to conclude that LCN DNA testing, as performed by New York City's Office of the Chief Medical Examiner ("OCME"), was generally accepted in the relevant scientific community. The DNA Subcommittee of the New York State Forensic Science Committee had accepted the method, and the district court, as additional support for its conclusion, reviewed expert testimony and evidence from other cases

3

that indicated general acceptance.[1]  Second, the district court did not abandon its role as an independent gatekeeper.  In fact, the district court looked beyond the endorsement of New York's DNA Subcommittee; specifically disclaimed any "rote reliance on prior court decisions," Special App'x 9; and listed five pages of exhibits it had considered as part of its examination of OCME's method, *id.* at 9–13.  Finally, Wilbern's argument that the district court disregarded evidence of contamination and irregularities in the DNA profiles goes to the weight of the evidence, not its admissibility.

## II.      Confrontation Clause

Wilbern next argues that the district court violated his Sixth Amendment right to confront the witnesses against him by admitting LCN DNA profiles without the testimony of every analyst personally involved in the DNA testing and editing process.  We conclude that any hypothetical violation of Wilbern's right to confrontation would have been harmless in light of the other overwhelming evidence that the government presented at trial to establish Wilbern's guilt.

"Alleged violations of the Confrontation Clause are reviewed *de novo*, subject to harmless error analysis."  *United States v. Vitale*, 459 F.3d 190, 195 (2d Cir. 2006).  Such a violation "may be held to have been harmless if the government can show beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  *United States v. Casamento*, 887 F.2d 1141, 1179 (2d Cir. 1989) (internal quotation marks omitted).  The overall strength of the government's case is "probably the single most critical factor in determining whether error was harmless," *Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir. 2000), but we also consider "the

---

[1] Those cases include *People v. Megnath*, 898 N.Y.S.2d 408 (Sup. Ct. Queens Cnty. 2010), and *State v. Rochat*, No. 13-07-01002-I (N.J. Super. Ct. Bergen Cnty. 2017).  Although *Megnath* and *Rochat* have since been abrogated and overturned, respectively, both of these state court cases come from jurisdictions that still require the proponent of expert testimony to meet the stricter test under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), not *Daubert*'s more flexible, factor-based test.  *See People v. Williams*, 35 N.Y.3d 24, 37–38 (2020); *State v. Rochat*, 269 A.3d 1177, 1202 (N.J. Super. Ct. App. Div. 2022).

prosecutor's conduct with respect to the improperly admitted evidence"; "the importance of the wrongly admitted testimony"; and "whether such evidence was cumulative of other properly admitted evidence," *United States v. Groysman*, 766 F.3d 147, 155 (2d Cir. 2014) (internal quotation marks omitted). We have found violations of the Confrontation Clause to be harmless error where "[t]he evidence of . . . guilt was overwhelming." *United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004).

Here, the government has met its burden of proving beyond a reasonable doubt that any error would not have contributed to the guilty verdict. Without the DNA evidence, the government's evidence at trial still included the identification testimony of Wilbern's former co-worker, ex-girlfriends, and a close friend, as well as circumstantial evidence of Wilbern's motive and links to various objects connected with the robbery. Specifically, Wilbern's former co-worker testified that he recognized Wilbern from surveillance photos shown on television in the wake of the robbery and that an FBI jacket worn by the person in the surveillance photos resembled an FBI jacket Wilbern had worn to a Halloween party in the years leading up to the robbery. The maintenance contractor who cleaned out Wilbern's property following a foreclosure proceeding years later discovered at the property an FBI jacket, which the contractor testified "look[ed] exactly the same" as the FBI jacket shown in the surveillance photos. App'x 2207. Two of Wilbern's ex-girlfriends separately identified Wilbern as the person in the surveillance photos. And Wilbern's close friend testified that the person in the one of the surveillance photos resembled Wilbern. The same close friend also testified that, in the years leading up to the robbery, he and Wilbern traveled to Japan together at least three or four times a year. During these trips, they visited souvenir stores that sold law enforcement memorabilia, including badges and jackets branded with the names of

5

various federal agencies. Moreover, an umbrella that the robber left behind at the scene had a Japanese sticker on it that translated to a Japanese name and a Shinto shrine located in Japan.

As additional circumstantial evidence, multiple witnesses testified that Wilbern felt mistreated by Xerox and had unsuccessfully sued the company for discrimination after being fired. Wilbern had an account at the Xerox Credit Union, which he had visited more frequently in the weeks leading up to the robbery. And further testimony and documentary evidence indicated that Wilbern had been struggling financially in the years leading up to the robbery. Wilbern's height also matched the height of the suspect as determined by the FBI's Forensic Audio-Video Image Analysis Unit. Taken together, the multiple identifications and circumstantial evidence of Wilbern's motive and connections to evidence at the scene of the robbery amounted to overwhelming evidence of Wilbern's guilt.

## III.    Communications with Counsel During Trial

Wilbern also argues that the district court violated his Sixth Amendment rights by instructing his counsel not to communicate with him during one overnight break during trial. Wilbern concedes that this issue is subject to plain error review because his trial counsel did not object to the district court's instruction. *See* Appellant's Br. 63. And under that standard, "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights." *United States v. Gomez*, 705 F.3d 68, 75 (2d Cir. 2013) (internal quotation marks omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted). We find no such plain error.

During trial, Wilbern's counsel alerted the district court to the existence of a potential conflict of interest and requested appointment of separate counsel pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982). The district court appointed conflict-free counsel who, after consulting with Wilbern, told the district court that he would need additional time to gather information from the other attorneys involved before making any recommendations to Wilbern. Taking into account the availability of the various attorneys involved, the district court decided to excuse the jury for the day and stated that it was "probably best right now" for Wilbern's trial counsel "not to communicate with Mr. Wilbern" until the matter could be resolved the next day. App'x 1594. Wilbern waived any conflict the next morning after a *Curcio* hearing. Wilbern's counsel then informed the district court that, during the time that the court had ordered her not to speak with Wilbern, the government had identified a witness it intended to call the following day. Wilbern's counsel, not having been able to speak with Wilbern, told the court that she was not prepared to cross-examine the witness. The court permitted the government to begin its direct examination, but granted Wilbern's counsel an additional day to prepare her cross-examination.

It was not plain error for the district court to appoint conflict-free counsel and inform potentially conflicted counsel that it was "probably best" not to communicate with Wilbern until any conflict could be resolved the following day. The district court faced a unique dilemma. It had to simultaneously try to safeguard Wilbern's Sixth Amendment right to unconflicted counsel and preserve his counsel's ability to adequately represent him by giving her enough time to consult with Wilbern prior to cross-examining the government's witness. Wilbern points to no case in which a district court has faced such a dilemma, and certainly no case in which the Supreme Court (or we) have suggested that the district court's approach to solving such a dilemma was impermissible. Likewise, it cannot be said that the district court's effort to balance Wilbern's

competing Sixth Amendment interests undermined the fairness, integrity, or public reputation of the proceedings.

## IV.     Investigation of Post-Trial Evidence of Juror Conduct

Wilbern further argues that the district court abused its discretion by failing to sufficiently investigate allegations that an alternate juror made a racist comment during the trial. "[A] post-verdict inquiry into allegations of [juror] misconduct is only required when there is clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant." *United States v. Baker*, 899 F.3d 123, 130 (2d Cir. 2018) (internal quotation marks omitted). "[T]he trial judge has broad flexibility in responding to allegations of juror misconduct, particularly when the incidents relate to statements made by the jurors themselves, rather than to outside influences." *Id.* at 131 (internal quotation marks omitted). This Court reviews a trial judge's treatment of alleged jury misconduct for abuse of discretion. *Id.* at 130. And a trial judge's inquiry into post-verdict allegations of juror misconduct is further curtailed by the no-impeachment rule embodied by Rule 606(b)(1) of the Federal Rules of Evidence, which prohibits jurors, with certain exceptions, from impeaching their verdict by testifying about the effect of any juror misconduct on that verdict.

The district court did not abuse its discretion by declining Wilbern's request to investigate the alleged jury misconduct. Specifically, an investigator working with Wilbern's defense team contacted jurors after the end of the trial and spoke with several of them, including the foreman. The foreman was the only seated black juror. At a later hearing, the investigator testified that the foreman mentioned to him that another juror had approached the foreman and reported comments made by an alternate juror about skin color that the reporting juror considered racist. The foreman told the investigator that he did not take any action with respect to the reported comments because

the juror who had allegedly made them remained an alternate. The investigator also testified that the foreman never indicated that he believed that the guilty verdict was reached on the basis of Wilbern's race and further testified that none of the five jurors that she spoke with said anything indicating that race had any effect on the outcome of the trial.

Wilbern asked the district court either to allow the defense to interview the foreman further or to conduct its own investigation into the conduct. The district court denied Wilbern's application for further investigation. It reasoned that an investigation into and evaluation of the alternate juror's pre-deliberation statement to the reporting juror would fall within Rule 606(b)(1)'s no-impeachment rule. And it concluded that there was "no basis, other than rank speculation, to suggest that the verdict in this case was infected in any way by racial animus." Special App'x 122.

In sum, the comment reported by the investigator—that the foreman had reported that another juror had reported that an alternate juror had made a racist remark—was too attenuated to constitute "clear, strong, and incontrovertible evidence" that any of the jurors were "animated by racial bias or hostility," let alone the reporting juror. *See Baker*, 899 F.3d at 134.

## V. Admission of Witness Identifications

Additionally, Wilbern argues that his due process rights were violated by the admission of identification testimony that was the result of impermissibly suggestive police tactics. This Court reviews the district court's determination of the admissibility of identification evidence for clear error and its decision not to hold an evidentiary hearing for abuse of discretion. *United States v. Gershman*, 31 F.4th 80, 93–94 (2d Cir. 2022). Upon review of the entire record, we conclude that the district court neither clearly erred in admitting the identification testimony nor abused its discretion in declining to hold an evidentiary hearing.

9

\* \* \*

For the reasons stated above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk