25-959-cr
*United States v. Marganda*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of March, two thousand twenty-six.

**PRESENT:**
> **GUIDO CALABRESI,**
> **ALISON J. NATHAN,**
> *Circuit Judges,*
> **JEANNETTE A. VARGAS,**
> *District Judge.*[*]

_____

**United States of America,**

> *Appellee,*

> v.                                                                  **No. 25-959-cr**

**Francius Marganda,**

> *Defendant-Appellant.*

_____

_____

[*] Judge Jeannette A. Vargas, of the United States District Court for the Southern District of New York, sitting by designation.

**FOR DEFENDANT-APPELLANT:** Florian Miedel, Miedel & Mysliwiec, LLP, New York, NY.

**FOR APPELLEE:** Victor Zapana & Laura Zuckerwise, Assistant United States Attorneys (Amy Busa, *on the brief*) *for* Joseph Nocella, Jr., United States Attorney, Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Irizarry, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

## BACKGROUND

On February 9, 2023, Francius Marganda was charged by superseding indictment with one count of conspiracy to commit securities fraud, one count of conspiracy to commit wire fraud, one count of securities fraud, six counts of wire fraud, one count of conspiracy to commit money laundering, and six counts of money laundering.   The charges arose from a Ponzi-style scheme Marganda ran with two co-conspirators in which they solicited millions of dollars of investments

in two fake companies (Easy Transfer and Global Transfer), misappropriated investors' funds, and generated misleading return statements to encourage further investment. Marganda orchestrated the scheme, directed his co-conspirators to execute contracts on his behalf, and paid them commissions for each recruited investor. Ultimately, Marganda defrauded hundreds of people out of $8,552,373.01—costing many victims their life savings and denying others educational opportunities and necessary medical treatment.

The scheme began to unravel in March 2021, when Marganda lacked the funds to pay investors on time. By May 2021, Marganda's co-conspirators stopped making payments, and Marganda fled the United States and continued to live in luxury around the world until he was arrested in Singapore in May 2023. Though he waived extradition, Marganda spent six months in Changi Prison in Singapore before he was returned to New York on November 9, 2023. On July 23, 2024, Marganda pled guilty to a single count of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff. In his plea agreement, Marganda also stipulated to having committed money laundering with the proceeds of his securities fraud.

Marganda appeared before the district court for sentencing on April 3, 2025. The parties and the district court agreed that Marganda's total Guidelines offense level was 34—comprising enhancements for the loss amount, substantial financial harm to the victims, sophisticated means of carrying out the fraud, and Marganda's leadership role, as well as reductions for Marganda's acceptance of responsibility—and that he was in criminal history category I. Marganda's Guidelines imprisonment range was thus 151 to 188 months, and he faced a statutory maximum sentence of 20 years. *Cf.* 15 U.S.C. § 78ff(a). The Government sought a sentence within the Guidelines range; Marganda's counsel requested a below-Guidelines sentence on the basis of difficulties Marganda faced growing up LGBT in Indonesia as well as the conditions of his confinement in Changi Prison and in the Metropolitan Detention Center (MDC) in Brooklyn.

After hearing from the Government, three victims, Marganda's counsel, and Marganda, the district court sentenced him principally to 216 months' imprisonment. The district court began with the Sentencing Guidelines, noting that the parties agreed on the range in Marganda's case but also that the range was "only a starting point," since the court was also required to consider the sentencing

4

factors included in 18 U.S.C. § 3553(a). *See* App'x 144–45. The district court also considered similar cases, explaining that "in some of the cases where sentences were meted out that were either at or close to the statutory maximum or at the high end of similar guidelines ranges, some of those schemes actually involved less loss over longer periods of time." *Id.* 148.

To Marganda's credit, the district court also acknowledged the challenges he faced both as a result of his LGBT identity and the conditions of Changi Prison and the MDC, but concluded that the seriousness of the offense conduct warranted a sentence near the statutory maximum. The district court emphasized Marganda's use of deceit, his preying on vulnerable members of a particularly trusting community, the speed and scale of financial loss, and his absconding once the scheme fell apart in fashioning the sentence. The district court imposed a one-year term of supervised release at Marganda's request. The district court also ordered forfeiture and restitution. Marganda did not object to any issue at the sentencing hearing.

The district court included a written basis for the incarceratory sentence in its written judgment issued April 15, 2025. The district court based the sentence

5

on the fact that the Ponzi scheme affected at least 235 victims (transferring over $24 million and depleting over $8.5 million), the substantial harm caused to many of the victims, and Marganda's fleeing the United States to live in luxury around the world for two years. On April 16, 2025, Marganda timely appealed the judgment.

## DISCUSSION

On appeal, Marganda challenges the procedural and substantive reasonableness of his sentence. He argues that the sentence is not procedurally reasonable because the district court failed to specifically explain its upward variance from the Guidelines range as required by 18 U.S.C. § 3553(c)(2). He also argues that his sentence is substantively unreasonable because it reflects inflated concern with the victims and insufficient consideration of mitigating factors. We review both aspects of the sentence for abuse of discretion. *United States v. Lawrence*, 139 F.4th 115, 121 (2d Cir. 2025).

### A. Procedural Reasonableness

As Marganda concedes, because he did not raise the challenge to the procedural reasonableness of his sentence below, we review it only for plain error.

*United States v. Mendonca*, 88 F.4th 144, 152 (2d Cir. 2023) (citing Fed. R. Crim. P. 52(b)). "Under that standard, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gomez*, 705 F.3d 68, 75 (2d Cir. 2013) (cleaned up).

A district court procedurally errs when it "does not adequately explain the sentence imposed" or "deviates from the Guidelines range without explanation." *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009). A district court is, of course, free to vary from the Guidelines, but in doing so "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). "[A] major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50.

The district court did not plainly err in justifying the imposition of a sentence above the Guidelines range. Rather, at multiple points during the sentencing hearing, the district court made clear that it knew of and had considered the upward variance. For example, at the outset, the district court clarified that the Guidelines were "only the starting point" in fashioning an appropriate sentence. App'x 144. In weighing the Section 3553(a) factors, the district court explained that "no scheme [it] ha[d] seen matches the level of harm that has been caused here[.]" *Id.* 146–47. And in comparing to "some of the cases where sentences were meted out that were either at or close to . . . the high end of similar guidelines ranges, some of those schemes actually involved less loss over longer periods of time." *Id.* 148. Just before imposing its sentence, the district court again implied the necessity of an above-Guidelines sentence, explaining that its "thoughts always . . . concluded . . . that nothing short of the maximum is appropriate here." *Id.* 154. Finally, just after imposing the sentence, the Government clarified with the district court that the "sentence is above the appellate waiver[.]" *Id.* 163.

8

All of that discussion, coupled with the district court's accurate calculation of the Guidelines range, demonstrated that it "consider[ed] the extent of the deviation" and whether its justification was "sufficiently compelling to support" it. *Cf. Cavera*, 550 F.3d at 189 (quotation marks omitted). As we have explained before, a district court may satisfy Section 3553(c)(2)'s requirements with a "brief explanation" of the "specific reason for the imposition of a sentence different from that described." *United States v. Goffi*, 446 F.3d 319, 321 (2d Cir. 2006) (quotation marks omitted). Likewise, Section 3553(c) generally "sets a low threshold," and "[t]he context and the record may render a district court's explanation adequate even where the judge might have said more." *United States v. Rosa*, 957 F.3d 113, 119 (2d Cir. 2020) (quotation marks omitted).

Marganda argues essentially that the district court erred by not announcing that it was varying upwards from the Guidelines before imposing its sentence. But "longstanding precedent of this Court hold[s] that a district court need not use any particular set of words to satisfy § 3553(c) or *expressly address* any particular sentencing consideration." *Id.* (emphasis added). Whatever more the district court could have added does not mean that the district court erred in a way that

"is clear or obvious, rather than subject to reasonable dispute[.]" *United States v. Prawl*, 149 F.4th 176, 188 (2d Cir. 2025).

## B. Substantive Reasonableness

Marganda also argues that his principal sentence of 216 months' imprisonment is substantively unreasonable. We disagree. We review the district court's imposition of a sentence "under a deferential abuse-of-discretion standard." *Gall*, 552 U.S. at 41. In doing so, "we take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *Cavera*, 550 F.3d at 190. And though we have a "responsibility to examine the actual sentence" rather than merely "rubber stamp" it, substantive review does not permit "tinkering with any sentence that appellate judges simply do not like." *United States v. Rigas*, 583 F.3d 108, 122–23 (2d Cir. 2009) (quotation marks omitted).

Here, the district court noted several factors that reasonably counseled in favor a long sentence approaching the statutory maximum, including that Marganda harmed hundreds of vulnerable victims (some substantially so), used deceit, and absconded for two years to live in luxury using the proceeds of his

10

criminal scheme. Marganda does not seriously dispute these aggravating factors, arguing only that the district court relied too heavily on the experience of the victims at the expense of other mitigating factors. But the district court *did* consider Marganda's argument for mitigation based on his upbringing and the harsh conditions of Changi Prison and the MDC. The district court simply weighed those factors less than the extensive harm and sophistication of Marganda's scheme, as well as his flight from justice. "In assessing the sentence imposed by a district court, we do not reweigh the relevant factors; rather, we evaluate only whether a factor can bear the weight assigned to it under the totality of circumstances in the case." *United States v. Albarran*, 943 F.3d 106, 116 (2d Cir. 2019) (quotation marks and alteration omitted). Because the aggravating factors considered by the district court readily bear the weight of Marganda's sentence, we find no abuse of discretion.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11